

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT

CRIMINAL ACTION NO. 06-31-KKC

UNITED STATES OF AMERICA,     PLAINTIFF

V     **PROPOSED FINDINGS OF FACT AND RECOMMENDATION**

WHITNEY ISIAH TILLMAN,     DEFENDANT

\* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

On August 17, 2006, a federal grand jury returned a two-count indictment against defendant Whitney Isiah Tillman ("Tillman"). Count 1 thereof charged that on or about May 22, 2006, Tillman did knowingly and intentionally possess with intent to distribute five grams or more of a mixture or substance containing a detectable amount of cocaine base (crack cocaine), a Schedule II controlled substance, all in violation of 21 U.S.C. § 841(a)(1). Count 2 thereof is a forfeiture count, seeking forfeiture of $1,061.00, pursuant to 21 U.S.C. § 853.

Defendants pled not guilty to the foregoing charge, and this matter is presently scheduled for a jury trial on January 3, 2007.

On October 27, 2006, defendant moved to suppress all evidence seized from his person on May 22, 2006, on the grounds that the search of his person and the seizure of the cocaine from his person was done in violation of the Fourth Amendment to the United States Constitution. [DE #15].

By Order of October 24, 2006, the district court referred this matter to the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(b), for hearing on defendant's motion to suppress evidence. An evidentiary hearing on defendant's motion to suppress was held on November 13, 2006. [DE #26]. The United States was represented by Assistant United States Attorney Roger W. West. Defendant was present in person and was represented by David J. Guarnieri. This suppression hearing was transcribed by Rhonda S. Sansom, Official Court Reporter.

At the suppression hearing, the Magistrate Judge heard testimony from Frankfort Police Officer Brian Redmon and from Frankfort Police Officer Scott Morgan. These witnesses were questioned by counsel for the United States and by defendant's counsel.

Subsequent to the suppression hearing, the United States filed its response to defendant's motions to suppress [DE #23], and defendant has filed reply thereto [DE #28]. Thus, this matter is ripe for review and has been submitted for a Report and Recommendation to the district court on defendant's motion to suppress.

## II. FACTUAL BACKGROUND

Brian Redmon is a police officer for the city of Frankfort, Kentucky. On May 22, 2006, he worked the day shift, 6:45 a.m. to 2:45 p.m. (Suppression Hearing, p. 3). Officer Redmon resides outside of Franklin County; therefore, he must drive his own personal vehicle in to work. (Suppression Hearing, p. 5). On May 22, 2006, at approximately 5:50 a.m., while Officer Redmon was driving his personal vehicle and was en route to work to be on duty at 6:45 a.m., he observed that the driver of a vehicle that he was following on his way to the police station driving erratically. Specifically, Officer Redmon described his observation of this vehicle, as follows:

> The vehicle was driving in an erratic manner. It went out of its lane several times, into the middle lane and also into the right lane. The vehicle went on up and then made a left turn onto Lafayette. As it was making its turn and it got onto Lafayette, the two wheels on the driver's side went completely up on the median.
> At that time, I radioed in to see if I could get a unit to pull the vehicle over for a possible DUI stop.[1]

Suppression Hearing, pp. 5-6.

Frankfort Police Officer Scott Morgan, who was on duty at the time, responded to Officer Redmon's call and was able to stop this vehicle at the intersection of Steele and Campbell Streets. Subsequently, Officer Redmon testified that the following events transpired:

---

[1] Since Officer Redmon was in his personal vehicle at the time, he could not initiate a stop of this vehicle and needed a patrol car to make the stop of this vehicle.

2

> A. I exited my vehicle. I approached Officer Morgan, explained to him what I observed, and we approached the vehicle. I went up to the driver's side and began conversing with the driver. I had her exit, because I thought she may have been under the influence of something. She indicated she was just tired.
> 
> And we ran her driver's license, and she came back suspended. We gave her – to the best of my recollection, we gave her a PBT, and she had not consumed any alcohol. She was placed under arrest for driving on a suspended license.
>
> Q. How many other people were inside the vehicle, please?
>
> A. Two people.

Suppression Hearing, p. 6.

The driver of the vehicle was arrested for reckless driving and for driving on a suspended driver's license. At this point, the police officers set about to search the vehicle, which could not be accomplished until the two passengers had exited the vehicle. One of the two passengers in this vehicle was in the back seat; the other passenger, Tillman, was asleep in the front seat of the vehicle. (Suppression Hearing, p. 7). Officer Redmon testified that the following series of events occurred subsequent to the driver's arrest:

> Q. All right. Now, after the arrest of the driver, what was it your intention to do with the vehicle? You said you got the passengers out. What was your intention, please?
>
> A. The reason we had the passengers exit was to do a search of the vehicle incident to the arrest.
>
> Q. So you asked Mr. Tillman to step out, correct?
>
> A. Yes, sir.
>
> Q. And do you recall what kind of pants he was wearing, sir?
>
> A. To the best of my recollection, it was shorts, like blue jeans, I think.
>
> Q. Did he have to be helped out of the vehicle or did he get out on his own power?
>
> A. I think he got out on his own.
>
> Q. Now, tell the Court, please. You said you saw a baggie; is that correct?
>
> A. Yes.
>
> Q. And which pocket was it in, sir?
>
> A. It was on the right side, and it was on the outside of the pants.

3

Suppression Hearing, p. 8.

Officer Redmon testified that during the course of defendant's exiting the vehicle and walking to the sidewalk, he observed, in defendant's pants pocket, a clear plastic baggie that was partially exposed and not all the way down in defendant's pants pocket. Without touching the baggie, Officer Redmon testified that he observed a white substance in the baggie, nearly half the size of a golf ball. (Suppression Hearing, p. 9). Based on his prior experience, Officer Redmon concluded that the substance in the clear plastic baggie was cocaine. *Id.* Based on this development, the police officers seized the clear plastic baggie from defendant's pants pocket, searched the defendant, and found and seized from his person some additional cocaine, $1,061 in cash, and four blue pills. At this point, defendant was arrested for trafficking in controlled substances.

### III. DEFENDANT'S MOTION TO SUPPRESS

As grounds for defendant's motion to suppress, he states:

> It is beyond dispute that this case involves a warrantless search. Further, based upon the Uniform Citation that was produced as part of written discovery, the defendant was ordered out of the vehicle so that he could be searched incident to the driver's arrest. At that time, there was no probable causes [sic] that the defendant, who was asleep in the front passenger's seat, was involved in any illegal activity that would justify his independent arrest or search. In United States v. Di Re, 332 U.S. 581, 587 (1948), the United States Supreme Court held that "we are not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled." Later, in *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979), the Supreme Court held that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."

Memorandum of Law in Support of Motion to Suppress, pp. 1-2 [DE #15].

In summary, defendant argues that "unless the officer had independent probable cause to search the defendant, it was illegal for the officer to order the defendant out of the car in order to search him." *Id.* at p. 2.

In response, the United States contends that defendant's motion to suppress is without merit because Officer Redmon lawfully stopped the vehicle for a traffic violation, and lawfully arrested the driver for reckless driving and/or driving on a suspended driver's license. The United States

asserts that as a matter of officer safety, it was proper for Officer Redmon to perform a search the vehicle incident to the driver's arrest, and that Officer Redmon lawfully requested the passengers to exit the vehicle so that a search of the vehicle incident to the driver's arrest could be conducted. The United States submits that since Officer Redmon observed, in plain view, the clear plastic baggy partially protruding out of defendant's pants pocket, as defendant was exiting the vehicle and moving toward the sidewalk, and observed that it contained a white substance the he suspected to be cocaine, Officer Redmon lawfully seized the clear plastic baggy from defendant's pants pocket and lawfully searched defendant for evidence of other contraband.

## Analysis

### A.  Removal of the defendant from the vehicle

In considering this matter, it must first be determined whether Officer Redmon was authorized to order defendant, who was asleep in the front passenger seat and had to be awakened by the police officers, to exit the vehicle. If Officer Redmon had no legitimate basis to order defendant to exit the vehicle, then, arguably, the contraband subsequently seized from defendant should be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

The United States Supreme Court has held that police officers may lawfully remove occupants from a lawfully-stopped vehicle. In *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), police officers on routine patrol observed defendant driving a vehicle with an expired license plate and lawfully stopped the vehicle for the purpose of issuing a traffic summons. Although the officers had no reason to suspect foul play from the defendant at that time, as there had been nothing unusual or suspicious about his behavior, the officers nevertheless ordered defendant to exit the vehicle. When defendant exited the vehicle, the officers noticed a bulge in his jacket, which led them to believe that he was armed. They performed a "patdown" *Terry* search and found a firearm. Defendant was convicted of carrying a concealed weapon and of unlawfully carrying a firearm without a license.

5

Mimms' conviction was affirmed on appeal, but the Supreme Court of Pennsylvania reversed the conviction. The United States Supreme Court granted certiorari and reversed the Pennsylvania Supreme Court, holding that directing the driver of a lawfully-stopped vehicle to exit the vehicle is a *de minimus* intrusion. "What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety." 434 U.S. at 111.

*Pennsylvania v. Mimms, supra,* concerned the removal of a driver from a vehicle and was silent as to the removal of a passenger from a vehicle. Subsequently, in *Maryland v. Wilson,* 519 U.S. 408 (1997), the Supreme Court considered the propriety of ordering a passenger to exit a vehicle. In *Maryland v. Wilson,* the police officer made a proper traffic stop of vehicle for a speeding violation and for having no license plate. There were two passengers in the vehicle. After the vehicle had stopped, the driver exited the vehicle to talk to the police officer, who noticed that the driver was nervous; the officer requested the driver to produce documentation showing that the car was a rental car as the driver claimed. While the driver was looking for the car rental documents, the officer also noticed that the front seat passenger was nervous and sweating. For this reason, the officer ordered the passenger to exit the vehicle. When he did, a quantity of cocaine fell to the ground.

Wilson, the passenger, was charged with possession of cocaine with intent to distribute. The trial court granted Wilson's motion to suppress, concluding that the act of the police officer in ordering him to exit the vehicle "constituted an unreasonable seizure under the Fourth Amendment." The trial court's ruling was affirmed on appeal. The United States Supreme Court granted certiorari and reversed, holding that "an officer making a traffic stop may order passengers to exit the vehicle pending completion of the stop." 519 U.S. at 415. Thus, *Maryland v. Wilson* extended the rule of *Mimms* to passengers.

Consequently, based on *Maryland v. Wilson, supra*, the Magistrate Judge concludes that, as a matter of officer safety,[2] Officer Redmon was authorized to search the vehicle in which defendant was a passenger and that Officer Redmon was also authorized to order the passengers in that vehicle to exit the vehicle "pending completion of the traffic stop," since a search of the vehicle could not effectively be conducted while the passengers remained in the vehicle. Thus, defendant was lawfully directed to exit the vehicle so that a search of the vehicle could be conducted incidental to the driver's arrest.

Defendant asserts that the facts of this case are more analogous to *Knowles v. Iowa*, 525 U.S. 113 (1998), than they are to *Pennsylvania v. Mimms, supra,* and *Maryland v. Wilson, supra,* the two cases on which the United States mainly relies. In *Knowles*, an Iowa police officer stopped the defendant for a speeding violation, and the police officer issued him a citation instead of arresting him. However, the police officer then conducted a full search of defendant's vehicle, and under the driver's seat he found a bag of marijuana and a "pot pipe." Knowles was then arrested and charged with violation of Iowa state laws dealing with controlled substances.

---

[2] The officer's safety is a significant factor, as the Court in *Pennsylvania v. Mimms*, recognized:

> We think it too plain for argument that the State's proffered justification--the safety of the officer--is both legitimate and weighty. "Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." *Terry v. Ohio, supra,* 392 U.S. at 23, 88 S.Ct. at 1881. And we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile. "According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile. Bristow, Police Officer Shootings--A Tactical Evaluation, 54 J.Crim.L.C. & P.S. 93 (1963)." *Adams v. Williams,* 407 U.S. 143, 148 n. 3, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972). We are aware that not all these assaults occur when issuing traffic summons, but we have before expressly declined to accept the argument that traffic violations necessarily involve less danger to officers than other types of confrontations. *United States v. Robinson,* 414 U.S. 218, 234, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Indeed, it appears "that a significant percentage of murders of police officers occurs when the officers are making traffic stops." *Id.,* at 234, n. 5, 94 S.Ct. at 476, n. 5.

434 U.S. at 110.

Knowles moved to suppress the evidence, arguing that the search of his vehicle could not be justified under the "search incident to arrest" exception recognized in *United States v. Robinson*, 414 U.S. 218 (1973), because he had not been placed under arrest for the speeding violation. The trial court denied the motion to suppress, relying on Iowa law that sanctioned the search. A divided Iowa Supreme Court affirmed on appeal. The United States Supreme Court granted certiorari and reversed, holding that since the police officer had only issued a citation to Knowles and had not arrested him for the speeding violation, neither of the two rationales for the "search incident to arrest" exception was sufficient to justify the search of the vehicle in Knowles' case.

For a couple of reasons, *Knowles* is not the panacea defendant envisions it to be. For one, *Knowles* is factually distinguishable since it did not concern a custodial arrest, whereas the present action concerns the custodial arrest of the driver of the vehicle in which defendant was a passenger. Second, *Knowles* concerned the propriety of the full-blown search of the vehicle, which netted the contraband leading to Knowles' arrest and being charged with violation of Iowa state laws dealing with controlled substances. In this case, the charges against defendant Tillman are not the result of a search of the vehicle in which he was a passenger, but are the result of Officer Redmon's observation of suspected contraband on defendant's person as he exited the vehicle. Thus, while *Knowles* may be good law, it is not controlling in this case.

Defendant also asserts that the evidence in this case demonstrated that the officers did not have a safety concern or a reason to search the vehicle in order to preserve evidence relative to reckless driving and/or driving on a suspended license. Defendant relies on *Clark v. Commonwealth*, 868 S.W.2d 101 (Ky. 1993), as being informative in this matter. In *Clark*, the defendant was stopped for a speeding violation and was arrested when it was discovered that he did not have a valid license. Clark's vehicle was searched (a "search incident to arrest"), resulting in his being charged with and convicted of receiving stolen property.

*Clark* is similar to *Knowles* in that both cases concern situations where a defendant was convicted of an offense, unrelated to the traffic violation, that resulted from the search of the vehicle.

8

To reiterate, the charge against defendant in this case resulted not from the search of the vehicle but from the police officer's observation of defendant as he exited the vehicle and the observation of the clear plastic baggy, in plain view, containing suspected cocaine that was partially protruding from defendant's pants pocket. Thus, *Clark*, like *Knowles*, is of no benefit to defendant.

Additionally, in defendant's memorandum filed in support of his motion to suppress, defendant states that "he was ordered out of the vehicle so that *he could be searched* incident to the driver's arrest." Memorandum of Law in Support of Motion to Suppress, p. 2 [DE #15]. There is no support in the record for this statement. The record reflects that defendant was ordered to exit the vehicle so that the *vehicle could be searched* incident to the driver's arrest. Thus, defendant mistakenly argues that he was removed from the vehicle for purposes of being searched. The decision to search defendant was made *after* Officer Redmon observed what appeared to be a plastic baggy containing cocaine protruding from defendant's right front pants pocket as the defendant exited the vehicle.

**B.     Seizure of cocaine from defendant**

Having determined that Officer Redmon's decision to order defendant to exit the vehicle posed no violation of defendant's constitutional rights, it must now be determined whether the seizure of the clear plastic baggy containing cocaine from defendant's right front pants pocket was a Fourth Amendment violation.

As previously stated, Officer Redmon testified that during the course of defendant's exiting the vehicle and walking to the sidewalk, he observed, in plain view, a clear plastic baggy in defendant's right front pants pocket; the baggy was partially exposed and was not all the way down in defendant's pants pocket. Without touching the baggy, Officer Redmon testified that he observed a white substance in the baggy, nearly half the size of a golf ball. (Suppression Hearing, p. 9). Based on his training and prior experience, Officer Redmon concluded that the substance in the clear plastic baggy was cocaine. *Id.*

The case law is well settled that during the course of traffic stop, police officers are authorized to seize, without a warrant, items that are in plain view, so long as the police officer is lawfully in a place from which to observe the items in plain view. For example, in *Colorado v. Bannister*, 449 U.S. 1 (1980), the police officer observed a blue 1967 Pontiac GTO exceeding the speed limit, but could not pursue the vehicle and make a traffic stop before the car disappeared from sight. Shortly thereafter, this same police officer heard a police radio dispatch reporting the theft of motor vehicle parts in the area where he was patrolling; the dispatch report also included a description of the suspects. Chrome lug nuts were among the items reported to have been stolen. Subsequently, the officer spotted the same vehicle he had seen speeding earlier, and this vehicle was speeding again. The police officer observed the car pull into a service station, and the officer followed it there for the purpose of issuing a traffic citation to the driver. As officer approached the car, both occupants exited the vehicle. The officer talked to the driver just outside the closed front door of the vehicle. During his conversation with the driver, the officer observed chrome lug nuts in plain view in the open glove compartment in the console between the bucket seats. Additionally, in the floor board of the back seat, he observed two lug nut wrenches. Recognizing that defendant and his companion met the description of the suspects, he arrested them and seized the chrome lug nuts and wrenches.

Defendant was charged with stealing motor vehicle parts. Prior to trial, the trial court granted his motion to suppress, and the Supreme Court of Colorado affirmed. The United States Supreme Court granted certiorari, reversed and held that the circumstances provided "not only probable cause to arrest, but also under *Carroll* and *Chambers*, probable cause to seize the incriminating items without a warrant. The Court set aside the judgment of the Supreme Court of Colorado and remanded the case for further proceedings.

Another case illustrating a lawful seizure of contraband observed in plain view during the course of a traffic stop is *Texas v. Brown*, 460 U.S. 730 (1983). In that case, police officers established a roadblock for a routine license check. Shortly before midnight, Brown came to the checkpoint, and the police officer asked him for his driver's license, while at the same time, shining

10

his flashlight into the car. The police officer observed Brown withdraw his hand from his right pants pocket and observed that a green party balloon, knotted about one-half inch from the tip was caught between the two middle fingers of Brown's right hand. The police officer observed Brown let the balloon fall to the seat beside his leg, and then Brown reached across the passenger seat and opened the glove compartment to look for his driver's license. Based on his previous experience in arrests for drug offenses, the police officer testified that he was aware that narcotics frequently were packaged in balloons like the one he saw in Brown's hand. After the police officer saw the green party balloon, he shifted his position in order to obtain a better view of the interior of the glove compartment. He observed that it contained several small plastic vials, quantities of loose, white powder, and an open bag of party balloons.

After rummaging briefly in the glove compartment, Brown told the officer that he had no driver's license in his possession. Thereafter, the police officer requested that he exit the vehicle. Brown complied, and the police officer reached into the vehicle and retrieved the green balloon, still in plain view, from the seat where Brown had left it, and noticed a sort of powdery substance within the tied-off portion of the balloon.

Brown was charged with possession of cocaine. Brown entered a nolo contendere plea and appealed the conviction. The Court of Criminal Appeals reversed the conviction, holding that "plain view *alone* is never enough to justify the warrantless seizure of evidence." 460 U.S. at 735. The United States Supreme Court granted certiorari and reversed, holding that since the police officer was lawfully in a position to observe the contraband in plain view, the warrantless seizure was lawful, as well as Brown's conviction. In a nutshell, the Court in *Texas v. Brown* stated:

> Maples lawfully viewed the green balloon in the interior of Brown's car, and had probable cause to believe that it was subject to seizure under the Fourth Amendment.

460 U.S. at 744.

Applying the foregoing well-settled principles of law to the facts of this case, the Magistrate Judge concludes that since the clear plastic baggy containing suspected cocaine was sticking out of defendant's right front pants pocket and was in plain view to Officer Redmon as defendant exited the

11

vehicle, Officer Redmon had probable cause to seize the clear plastic baggy from defendant at that time, based on his conclusion, grounded in his training and experience in drug cases, that this clear plastic baggy contained cocaine. Additionally, the Magistrate Judge concludes that this development (the observation of a clear plastic baggy containing suspected cocaine in defendant's pants pocket) also established probable cause to search defendant's person for evidence of additional contraband.

### IV. CONCLUSION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that defendant's motion to suppress the evidence seized from his person on May 22, 2006, [DE #15] be **DENIED**.

The Clerk of the Court shall forward a copy of this Proposed Findings of Fact and Recommendation to the respective parties. Any objections to this Proposed Findings of Fact and Recommendation shall be filed within ten (10) days of the date hereof and any response to objections filed shall be filed within five (5) days thereafter. In the absence of any objections filed hereto, a party waives the right to raise the objections in the Court of Appeals. 28 U.S.C. section 636(b)(1)(B); Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), affirmed, 474 U.S. 140 (1985); Wright v. Holbrook, 794 F.2d 1152, 1154-55 (6th Cir. 1986); Fed.R.Civ.P. 72(b).

This 30th day of November, 2006.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE